## HARDING v. GARBER, *Judge.*

No. 2167, Okla. T.    Opinion Filed Dec. 28, 1907.

(93 Pac. 539.)

1.    APPEAL—Reversal,—Remand—Effect of Mandate Upon Procedure Below. A mandate from a superior court to an inferior court that reverses an order setting aside a decree of foreclosure, and that directs an order to be made in the foreclosure proceeding that will permit G., one of the defendants therein, to appear, plead, and defend, but that will not disturb the possession of H., who in the opinion of the court from which the mandate is issued is a mortgagee in possession, does not deprive the inferior court of jurisdiction to appoint a receiver, when legal grounds therefor exist.

2.    MORTGAGES—Mortgagee in Possession—Receiver—Appointment Warranted, When. A mortgagee in possession may be devested of possession by appointment of a receiver, when it appears that the mortgagee is irresponsible, or that the rents and profits will be. lost or be in danger of loss, or that the mortgagee is committing waste upon or materially injuring the premises.

3.    MANDAMUS—When Lies—Judicial Acts. The writ of mandamus does not lie from a superior court to an inferior court to control its judicial action.

(Syllabus by the Court.)

Application of Daniel W. Harding for writ of mandamus to M. C. Garber, judge of the district court of Garfield county, to control judicial action. Writ denied.

Relator's petition, after omitting caption and exhibits, is:

"The relator, Daniel W. Harding, represents and shows to this court: That on, to wit, the ——— day of ———, 1896, one John Romig held a mortgage on the east half of the northeast quarter of section eighteen (18), in township twenty-two (22) north, of range six (6) west of the Indian meridian, in Garfield county, Okla. T. That the apparent legal title to said land was at the time in one Myrtle Gillett. That said mortgage became in default, and said Romig brought suit to foreclose said mortgage in the district court of Garfield county, Okla. T., and cause proper service by publication to be made on Myrtle Gillett, the apparent owner of said land. That said Romig obtained judgment in said court foreclosing his said mortgage. That said land was sold under the judgment of said court to said John Romig, and the sale duly confirmed, and sheriff's deed executed and recorded, and said Romig then went into possession of said land. That the record of all said proceedings in said court are regular. That thereafter John Romig sold and conveyed said land to the relator, Daniel W. Harding, who immediately went into possession of said land, and has continued in absolute 'and exclusive possession of said land down to the date of filing this application. That this relator bought said land, relying upon the record in said cause, and without any knowledge of adverse claims to said lands, based upon any matters *dehors* the record in said cause, and this applicant paid full value for said land in good faith, and has since entering the possession of said land, permanently improved the same, paid taxes, effected insurance and repairs amounting in the aggregate to over $7,000. That afterwards, and during the year 1898, Myrtle Gillett appeared in said district court and filed her motion in the cause of *Romig v. Myrtle Gillett* (in which the mortgage was foreclosed, and the land sold to Romig as aforesaid) to set aside foreclosure, judgment, and all proceedings had thereunder, for the alleged reason that the said judgment was void because she, as defendant in said action, was a resident of Oklahoma at the time service by publication was obtained on her in said action as a nonresident. That upon said motion said court entered an order ·setting aside foreclosure, judgment, and

all proceedings had thereunder, and ordered this applicant forthwith dispossessed from said land because said court held said judgment was void. That this applicant duly appealed from said order to the Supreme Court of Oklahoma, and that court, on consideration of said appeal, affirmed the order of the lower court in all things. That from the decision of said Supreme Court this applicant appealed to the Supreme Court of the United States, and that court, in the month of November, A. D. 1902, upon consideration of the appeal of this applicant, reversed the judgment of the Supreme Court of Oklahoma in words and figures as follows, to wit: 'The decision of the Supreme Court of Oklahoma will be reversed, and the cause remanded to that court, with instructions to set aside the order of the trial court, and to direct the entry of one which without disturbing the possession of Harding will give to the appellee the right to appear, plead, and make such defense as under the facts of the case and the principles of equity she is entitled to.' A full and complete copy of said mandate is hereto attached as Exhibit A, and made part hereof. That upon said mandate this court issued its mandate to the trial court, to wit: The district court of Garfield county, Okla. T., directing said trial court to set aside the judgment in foreclosure, and to enter an order allowing Myrtle Gillett to appear, plead, and make such defense as under the facts of the case and the principles of equity she may be entitled, 'and that the possession of Daniel W. Harding to the land in controversy be not disturbed, pending said proceedings, and that his rights and interests in the premises be determined in said cause.' A full and complete copy of said mandate is hereto attached, and made a part hereof, marked 'Exhibit B.' That upon said mandate the district court entered its order allowing Myrtle Gillett to plead. A copy of said order is hereto attached and made part hereof as Exhibit C. That in pursuance of said order Myrtle Gillett appeared in said court and filed her pleading, alleging that she had sold all her interest in the land to George P. Rush and Bruce Sanders, and that her only interest in the matter was a vendor's lien of $250. That Rush & Sanders held the equity of redemption in and to said land; asked that they be made parties; asked that an accounting be taken of the rents and profits received by Harding, and that they be applied on the payment of the mortgage of Romig; alleged that Harding was a mortgagee

in possession. Rush and Sanders filed a motion to be made parties. This motion the lower court overruled. This applicant and John Romig each moved for judgment on the pleadings, and the lower court sustained said motions. A copy of said judgment is hereto attached, and made part hereof as Exhibit D. That thereafter Myrtle Gillett appealed from said judgment to the Supreme Court of Oklahoma, and that court reversed the judgment of the lower court, rendering judgment on the pleadings, and to make Rush & Sanders parties, and to proceed further in accordance with said opinion. That from this judgment of the Supreme Court of Oklahoma this applicant appealed to the Supreme Court of the United States, and said court dismissed said appeal because the decision of the Supreme Court of Oklahoma was not a final decision, and did not fix the substantial law of the case. That the mandate of the Supreme Court of Oklahoma, based on the order of the United States Supreme Court dismissing the appeal of this applicant, was filed in the district court of Garfield county, Oklahoma, on or about the 31st day of May, 1907. That said cause now stands for trial under the several mandates of the Supreme Courts. That no judgment has ever been rendered in said cause on the pleadings of Myrtle Gillett or her grantees, Rush & Sanders, nor has any accounting ever been taken or any trial had, nor has said cause ever been set for trial. That notwithstanding these facts the said George P. Rush and Bruce Sanders gave this applicant notice that they would present their application for the appointment of a receiver in said cause to take possession of said land and collect the rents and profits thereof, to preserve the same pending the trial. That said application for a receiver was presented to Hon. M. C. Garber, judge of said court, on the 10th day of June, 1907, upon the said application for a receiver, and the answer of the relator to said application, and the demurrer of said applicants to all that portion of relator's answer which pleaded and set out the mandate of the Supreme Court of the United States, and the mandate of this court, to the effect that relator's possession should not be disturbed pending the trial.

"Relator alleges that said Judge M. C. Garber sustained a demurrer to his plea that said mandate protected him in his possession until after said trial, and refused to consider said mandates. Relator further says that the further hearing of said ap-

plication was by said judge continued until June 20, 1907, and on said date said judge did appoint a receiver in this cause to take possession of said land and collect the rents and profits thereof (a certified copy of said order is hereto attached as Exhibit E) and your relator alleges that unless this court grants a writ of mandamus to compel said judge to obey said mandates, and desist from disturbing the possession of this relator pending the trial in this cause, said judge will enforce the appointment of said receiver, and dispossess this relator, based on his decision that said mandates do not prohibit him from appointing a receiver and taking possession of said land pending said hearing. Your relator alleges that he has no adequate remedy at law by which he can compel said lower court to obey said mandates; but relator alleges that a receiver has been appointed in violation of said mandates, and he has no other remedy than by the mandate of this court, enforcing its mandate.

"Wherefore applicant prays that a peremptory writ of mandamus issue, directed to Hon. M. C. Garber, compelling him to obey the mandate of this court, and not disturb the possession of the applicant by appointing a receiver or otherwise, and to vacate the order appointing said receiver, and all proper relief."

To relator's petition respondent interposed a general demurrer, and upon relator's petition and respondent's demurrer the case is submitted to this court.

It is necessary to an understanding of this action that a brief history of the litigation out of which it has grown be given. This action grows out of a suit brought in the district court of Garfield county on the 11th day of March, 1896, by John Romig against Don A. Gillett and Myrtle Gillet, to recover a judgment against Don A. Gillett for $749, with interest and attorney's fees, and to foreclose a certain mortgage, executed by Don A. Gillett to John Romig upon real estate situated in Garfield county, Okla., to secure said indebtedness. On the 18th day of December, 1896, judgment was rendered by the court in favor of John Romig for the amount sued for and foreclosing the mortgage. Sale of the land was afterwards made under the decree of foreclosure, and confirmed by the court. At the sale John Romig,

the plaintiff in the action, and the mortgagee under the mortgage foreclosed, became the purchaser of the land involved. On the 9th day of March, 1897, John Romig sold said premises to Daniel W. Harding, the relator in this action. Subsequently, on the 17th day of March, 1898, Myrtle Gillett filed her motion to set aside the judgment and decree of foreclosure upon different grounds, which are not necessary to be repeated here. The court sustained the motion of Myrtle Gillett to vacate the judgment of foreclosure and order her restored to the possession of the premises of which she had been wrongfully dispossessed. From this judgment plaintiffs Romig and Harding appealed to the Supreme Court of Oklahoma Territory. The Supreme Court of Oklahoma affirmed the judgment of the trial court. *John Romig and Daniel W. Harding v. Myrtle Gillett*, 10 Okla. 186, 62 Pac. 805. From this judgment Romig and Harding appealed to the Supreme Court of the United States. The Supreme Court of the United States reversed the decree of the Supreme Court of Oklahoma, and remanded the case to that court, with directions to set aside the order of the trial court, and to direct the entry of an order which, without disturbing the possession of Harding, would give the appellee Myrtle Gillett the right to appear, plead, and make such defense as under the facts of the case and the principles of equity she was entitled to. *John Romig and Daniel W. Harding v. Myrtle Gillett*, 187 U. S. 111, 23 Sup. Ct. 40, 47 L. Ed. 97. A mandate was issued from the Supreme Court of the United States to the Supreme Court of Oklahoma, in obedience to which the Supreme Court of Oklahoma issued its mandates to the district court of Garfield county. Certified copies of these mandates are attached as exhibits to relator's petition in this action, and contain respectively the language quoted in relator's petition.

The district court of Garfield county, with James K. Beauchamp sitting as judge, in obedience to the mandate of the Supreme Court of Oklahoma, on the 1st day of June, 1903, made an order vacating and setting aside the judgment and decree of

foreclosure made in the case by that court on the 18th day of December, 1896, and permitting Myrtle Gillett to appear, plead, and defend. A copy of this order is attached to relator's petition in this action. On December 1, 1903, Myrtle Gillett entered her appearance in the original action in the district court of Garfield county, and filed an answer and cross-petition. Subsequently Daniel W. Harding, the grantee of Romig, filed an answer on cross-petition to the answer and cross-petition of Myrtle Gillett. After various answers and cross-petitions and replies thereto had been filed, Romig and Harding moved the court for judgment on the pleadings, which motion was by the court sustained, and the decree of foreclosure rendered by that court on the 18th day of December, 1896, in favor of Romig against the Gilletts, was reinstated, confirmed, and ratified. This judgment on the appeal of Myrtle Gillett to the Supreme Court of Oklahoma was reversed. *Gillet v. Romig et al.,* 17 Okla. 324, 87 Pac. 325 From this judgment of the Supreme Court of Oklahoma appeal was taken by Romig and Harding to the Supreme Court of the United States which appeal was dismissed by that court.

George P. Rush and Bruce Sanders. who had become the grantees of Myrtle Gillett, and who had become interpleaders in the original action pending in the district court of Garfield county on the 10th day of June, 1907, made application to the respondent in this action for an order appointing a receiver in said action to take charge of the land in controversy, and collect the rents and profits therefrom. On the 20th day of June, 1907, respondent, as judge of the district court of Garfield county, granted the application, and made an order appointing a receiver as prayed for.

Relator alleges that under the language of the Supreme Court of the United States, quoted in his petition as follows: "The decision of the Supreme Court of Oklahoma will be reversed, and the case remanded to that court with instructions to set aside the order of the trial court, and to direct the entry of one,

which, without disturbing the possession of Harding, will give to the appellee the right to appear, plead, and make such defense as under the facts in the case and the principles of equity she is entitled to," and under the language of the mandate of the Supreme Court of Oklahoma quoted in his petition as follows: " * * * and that the possession of Daniel W. Harding to the land in controversy be not disturbed pending said proceedings, and that his rights and interests be determined in said cause"— the respondent was without jurisdiction to make the order made by him on the 20th day of June, 1907, appointing a receiver, and that said order is in violation of the mandates of the Supreme Court of Oklahoma, and of the Supreme Court of the United States.

*Moore & Moore* and *Buckner & Buckner*, for relator.

*C. G. Hornor, H. G. Sturgis,* and *James W. Steen,* for re-States.

HAYES, J.: (after stating the facts as above). The principle question presented to this court by the pleadings before it is whether the respondent, as judge of the district court of Garfield county, under the mandates of the Supreme Court of the United States, and of the Supreme Court of Oklahoma, directing that an order be made by the trial court in the principal case, which, without disturbing the possession of Harding, would give to the appellee Myrtle Gillett the right to appear, plead, and make such defense as under the facts in the case and the principles of equity she was entiteld to, had jurisdiction to hear the application for or make an order appointing a receiver to take possession of the land and premises in controversy.

Counsel for relator contends that the mandates of the Supreme Court of the United States and of the Supreme Court of Oklahoma fix the status of the relator in the principal action, pending the final termination thereof; that the effect of said mandates is to give the relator a final judgment for the possession of

said land and premises, pending the final termination of the original action; and that his status thus fixed cannot be changed prior to that time, and that until such termination of said action he has by virtue of said mandates possession of said land and premises as the owner thereof, not subject to the control of any court.

In determining what was presented to and decided by a court, it is proper to look both to the opinion and mandate of the court. *Guadalupe Thompson, Administratrix, et al. v. Maxwell Land Grant & Railway Co.,* 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539. In which case the court said: "We take judicial notice of our own opinions; and, although the judgment and mandate express the decisions of the court, yet we may properly examine the opinion in order to determine what matters were considered, upon what grounds the judgment was entered, and what has become settled for future disposition of the case." The mandate of the Supreme Court of the United States from which relator quotes in his petition contains this further language: "You therefore are hereby commanded that such action and further proceedings be had in said cause in conformity with the opinion and decree of this court. * * *" Mr. Justice Brewer, who delivered the opinion of the court, in discussing the rights of Harding, who was one of the appellants before the court, said: "Harding, as the grantee of a purchaser at a foreclosure sale, stands in the shoes of the mortgage. *Bryan v. Brasius,* 162 U. S. 415, 16 Sup. Ct. 803, 40 L. Ed. 1022. As shown by the opinion in that case and cases cited therein a mortgagee, who enters into possession, not forcibly, but peaceably, and under authority of a foreclosure proceeding, cannot be dispossessed by the mortgagor, or one claiming under him, so long as the mortgage debt remains unpaid." If, in determining what was decided by the Supreme Court of the United States, and if, in construing its mandate, we consider in connection therewith, as we should, the opinion of the court, it appears that it was decided by that court

that the order of the trial court setting aside the judgment and decree of foreclosure, and directing that Harding be dispossessed of the premises, should be vacated, and that such order should be made as would protect the rights of both parties, an order that would give Myrtle, Gillett an opportunity to appear, plead, and defend in the foreclosure proceedings, to do which, would require that the judgment and decree of foreclosure be opened; but that since Harding had come peaceably into possession of the mortgaged premises as the grantee of the mortgagee, who was the purchaser under the foreclosure proceedings, his rights, pending the final termination of the action, were those of a mortgagee in possession, and as such should be protected. It is our opinion that it was the intention of the Supreme Court of the United States by its mandates to protect, and that its mandates and the mandate of the Supreme Court of Oklahoma do protect, Harding only in that possession which the Supreme Court of the United States said under the conditions Harding had, which was the possession of a mortgagee. This is the construction that has been given to the judgment and opinion of the Supreme Court of the United States by the Supreme Court of Oklahoma. *Gillett v. Romig et al.*, 17 Okla. 324, 87 Pac. 325.

The mortgagee in possession holds the estate as a mere trustee for his indemnity. He must perform the duties of his trust. He must apply the rents and profits for the purpose of the mortgage, and must treat the property 'as a provident owner would. A court of equity will compel him to perform these duties of his trust. It is a general rule of law that the mortgagee, or his grantee, who has come peaceably into possession of the mortgaged property, cannot be dispossessed of same so long as the mortgage debt remains unpaid; but if it appears that the mortgagee is irresponsible, or that the rents and profits will be lost or be in danger of loss, or that the mortgagee is committing waste upon or materially injuring the premises, a receiver may be appointed. 20 Amer. & Eng. Enc. of Law (2d Ed.) 1008; 2

Pingrey on Mortgages, § 1796; *Boston & Providence R. R. Co. v. Railway Co.,* 12 R. I. 220.   The judgments and mandates of the Supreme Court of the United States and of the Supreme Court of Oklahoma protect Harding, pending the termination of the principal action, only in that possession which he had, which, under the opinion of the Supreme Court of the United States, was the possession of a mortgagee.  As long as Harding discharges the duties of his trust, he should be protected in that possession; but from the authorities cited, *supra,* it is seen that the possession of a mortgagee may be devested when it appears that the mortgagee is irresponsible, or that the rents and profits will be lost or be in danger of loss, or that the mortgagee is committing waste upon or materially injuring the premises, and that a receiver may be appointed.

An application for the appointment of a receiver in the principal action now pending in the district court of Garfield county, containing allegations for the appointment of a receiver on the grounds above mentioned, would be such an application as the court would have jurisdiction to hear, and the act of the court in granting or refusing the same would be a judicial act. The application for the appointment of a receiver presented to respondent is not before this court, and in the absence of the same it will be presumed that it contained legal grounds to warrant the action of the court.

The writ of mandamus does not lies from a superior court to an inferior court to control its judicial acts, or its exercise of judicial discretion.   Merrill on Mandamus, 32.

It is the opinion of the court that repondent's demurrer to relator's petition should be sustained, and the writs of peremptory mandamus denied, and it is so ordered.

All the Justices concur.