## WELLS et al. vs. RICE et al.

1. SALE BY COURT: *When complete.*

Until confirmed by the court, a sale made under its decree is not completed; and a deed from the commissioner to the purchaser confers upon him no right to the property, and may be assailed in a collateral proceeding.

2. MORTGAGOR AND MORTGAGEE: *Ejectment.*

Upon failure to pay the mortgage debt at the time stipulated in the mortgage, the estate of the mortgagor becomes forfeited, and ejectment can not be maintained against the mortgagee in possession, or those holding under him, until payment of the debt. But payment satisfies an unexecuted decree of foreclosure, and revests the estate in the mortgagor, his heirs or assigns, and may be given in evidence to support the action.

APPEAL from *Randolph* Circuit Court.
Hon. L. L. MACK, Circuit Judge.
*Henderson* for appellants.

HARRISON, J.   On the twenty-second day of March, 1875, Fielding Rice and Susan Rice commenced this action against James M. Wells and Adolphus Kibler, to recover possession of the west half of the southwest quarter of section 11, in township 21, north, of range 1, west, to which they claimed title as heirs at law of their

father, William L. Rice, who claimed title by entry and purchase from the government.

The defendants claimed the land in severalty, but did not in their answer, which was joint, designate the part of each, nor was it in any manner shown in the subsequent proceedings. Kibler, they said, purchased from Wells, and Wells the whole tract from Louis Hanauer, who purchased the north half of it, at a sale under a decree of foreclosure of a mortgage thereof from said William L. Rice to said Hanauer; and the south half at a sale made by the administrator of said William L. Rice under an order of the court of probate, for the payment of the debts of his intestate's estate; and they averred that they had had peaceable, adverse and continuous possession for more than seven years before the commencement of the suit, and set up and pleaded the statute of limitations.

The verdict of the jury was in favor of the plaintiffs, for the whole tract, and for six hundred dollars damages; but the plaintiffs entered a disclaimer as to the south half of the tract, and a remittitur of the damages.

The defendants moved for a new trial; their motion was overruled, and they appealed.

It is unnecessary to notice the evidence and proceedings upon the trial in relation to the south half of the tract.

The plaintiffs read to the jury a patent from the United States to William L. Rice, for the northwest quarter of the southwest quarter of said section 11, dated the seventeenth day of August, 1838.

They then read from the chancery record of the Randolph circuit court the following two orders in—so stated in the bill of exceptions—the suit of foreclosure recited in

the deed of the commissioner therein, to Louis Hanauer, exhibited with the answer:

"Louis Hanauer, Daniel Hanauer and Jacob Hanauer, merchants and partners, doing business by the firm name, style and description of L. Hanauer & Co.
vs.
William L. Rice.
} Bill to foreclose.

"Now come the plaintiffs by their solicitors, and file their motion to require James Martin, the commissioner heretofore appointed in this case to sell the lands as commanded."

"Louis Hanauer, Jacob Hanauer and Daniel Hanauer, merchants and partners, doing business by the firm name, style and description of
L. Hanauer & Co.,      Complainants,
vs.
William L. Rice,      Defendant.
} Bill to foreclose mortgage.

" On this day come the complainants by their solicitor, and showed to the court here that James Martin, Esq., who was appointed commissioner in this case to sell the mortgaged premises, has failed to make sale thereof according to the direction of the decree in this case, and moved the court to direct said commissioner to proceed to sell said premises ; and the premises being seen and fully understood by the court, it is therefore ordered, adjudged and decreed that the order of this court, made at the last term, in this case, be, and is hereby, revived ; and the said commissioner is hereby directed to proceed and sell said lands according to the terms and directions of said decree ; and that he, as such commissioner, report his proceedings to this court at the next term, to which time this case stands continued."

They then introduced the following witnesses:

Larkin Johnson, who testified: That he, in 1852 or 1853, lived at the Warm Springs—the land in controversy—and

was well acquainted with William L. Rice and his daughter, Susan. Susan was about the age of witness's son, who was, at the time mentioned, eighteen months or two years old, and he was a little older than she; neither of them could talk plainly. His son was twenty-five years old on the fifth of January, 1877; she was then, at the time of testifying, he understood, married.

Edmond Gilliam testified: That he, in 1856 or 1857, went with William L. Rice to Pocahontas to see Louis Hanauer, who was then merchandizing there. The witness then knew that Rice had before sold or delivered to Hanauer a negro woman on a mortgage, for which Hanauer was to allow him $1,000 and all he could get for her over that sum. Hanauer told Rice that he did not get but $400 for the woman, and refused to account to him for any more. They got angry and had some words, and the interview ended by Rice telling Hanauer that he would sue him unless he paid him the overplus on the negro woman, and Hanauer saying he would not pay, and that he (Rice) owed him on a fair settlement.

William H. Waddle testified: That he was a clerk of Louis Hanauer, in Pocahontas, in the years 1856, 1857 and 1858, and knew that William L. Rice, about that time, let Louis Hanauer have a negro woman. Louis, Jacob and Daniel Hanauer did business together, and appeared to be jointly interested. When any land was sold under deed of trust, mortgage or execution, that which was valuable was generally bought in by Louis Hanauer. William L. Rice sometimes had an open account with the house.

Nicholas Bach testified: That shortly after the death of William L. Rice, which was in 1857 or 1858, he went to Batesville to enter a tract of land adjoining the Rice Springs, or Warm Springs, and he met Daniel Hanauer

there. That Daniel Hanauer asked him why he did not buy the springs· property. He told him he was not able— that if he should do so, they would want their money on the mortgage, and he could not pay it, and Daniel Hanauer replied, " that that was all settled, and the mortgage satisfied; and that there was not more than fifty dollars between them, and that was against the estate."

And John P. Black testified: That Louis, Jacob and Daniel Hanauer were partners. That he was present at the foreclosure sale of the land—the northwest quarter of the southwest quarter of said section (11), and that it was bid in by Jacob Hanauer.

It was admitted that the plaintiffs had brought a previous action against the defendants for the land, which was commenced on the twenty-second day of May, 1874, and a nonsuit was taken in it at the November term of the same year. The defendants objected to the admission of the orders read from the chancery record, of the testimony of Gilliam, Waddle, Bach and Black.

The defendants read to the jury a deed, from James Martin, as commissioner in chancery, to Louis Hanauer, for the said northwest quarter of the said southwest quarter, in which it was, in substance, recited: That the said William L. Rice, on the twenty-fourth day of April, 1850, executed to the said Louis Hanauer a mortgage on the said tract of land, and other property, not described, to secure the payment of a note of that date to him for $1,000, bearing ten per cent. interest from date until paid—payable on the first day of April, 1852; that the said Louis Hanauer brought suit, after the maturity of the note, in the Randolph circuit court in chancery, for a foreclosure of the mortgage, and sale of the mortgaged property, and a decree of foreclosure and sale was rendered thereon on the

fourth day of December, 1854, and that he, the said Martin, was appointed such commissioner to sell the property and carry the decree into effect.

That the said William L. Rice, having died, and Elizabeth Rice been appointed administratrix of his estate, the decree was, on the twenty-fifth day of May, 1858, revived against said administratrix, and he, the said commissioner, was directed, unless the money should be paid on or before the first day of the next term of the court, the same being the twenty-second day of November, 1858, to sell said property, on that day, to the highest bidder for cash; and that the money not having been paid, and having given the notice of the sale prescribed in the decree, he, on that day, offered the said tract at public auction, in pursuance of the decree, and the same was bid off and purchased by the said Louis Hanauer, at and for the sum of $400. Which deed was dated the twenty-seventh of November, 1858, and acknowledged before the clerk and filed for record the same day.

They then read a power of attorney from Louis Hanauer and Jacob Hanauer to James C. Marvin to sell any or all of the land owned by them in the counties of Randolph, Green, Craighead and Lawrence, in the state of Arkansas; and Ripley, Howell, Oregon and Carter, in the state of Missouri, dated on the thirtieth of May, 1868, and a deed from them, by their said attorney, to the defendant Wells for the entire tract in controversy—dated the sixth day of October, 1869.

Isam Russell, a witness for the defendants, testified that he had lived a near neighbor to William L. Rice, and was well acquainted with him; that he died in 1857 or 1858. He left two children, a son, who died about 1863, and a daughter. The daughter's name was Susan, and she was

about one year younger than a daughter of the witness, who was twenty-nine years old on the thirty-first day of January, 1877. Susan had since married, but had not, by her marriage, changed her name. He also said that the widow of William L. Rice was in possession of the land in 1866. The premises had been, both before and since that time, occupied by visitors at the springs which were on it, but he did not know under whom they occupied. But only a small part was cleared. Wells went into possession in 1869 or 1870.

Edmond Gilliam testified for them that the premises were, in 1867 and 1868, occupied by visitors, but said he did not know by whose permission. He stated, further, that William L. Rice was in possession in 1857, and his widow in 1866. And Joseph T. Fisher, another witness for them, testified that Wells went into possession in January, 1870.

The deed from Martin, as commissioner, to Louis Hanauer, contained no recital of a confirmation of the sale by the court, or of a report of it, having been made by him to it.

It is contended by the appellants that the sale by the commissioner could not be attacked collaterally, or in an action other than that in which it was ordered, or it be shown that the debt was paid before the sale was made.

This position would undoubtedly be correct, had there been a confirmation of the sale, and it had so become completed and absolute.

But, until confirmed by the court, a sale made under its decree is not completed, and a deed to the purchaser confers upon him no right to the property.

"The theory of sales of this character is," as the court say, in *Sessions v. Peay, 23 Ark., 41,* "that the court is itself

the vendor, and the commissioner, or master, its mere agent in executing its will. The whole proceeding, from its incipient stage up to the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision of the court. The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require." *Ror. on Jud. Sales, secs. 1, 2; Freem. Void Jud. Sales, sec. 41.*

. No evidence whatever was offered that the sale had been confirmed, or that it had ever been reported to the court; consequently no title could be established in the defendants through the deed. Although, therefore, it may not have been necessary for the plaintiffs to have shown that the debt was paid, evidence of such fact was not improper and could not have prejudiced the defendants. If, however, the debt still existed, the plaintiffs could not maintain their action, if the defendants, as they claimed, entered into possession under the mortgagees, because upon the failure to pay the debt at the time stipulated in the mortgage, the estate of the mortgagor was forfeited. It was competent, therefore, for the plaintiffs to show that the debt had been paid, and the decree satisfied, by which the title revested in the mortgagor.

The orders in the case were produced, as it clearly appears, not only for the purpose of showing that the suit for the foreclosure was not such as was recited in the deed, but by showing the interest of Daniel Hanauer in the mortgage, to lay a foundation for the proof of his declaration that the mortgage had been paid by William L. Rice, in his lifetime, and the decree satisfied.

As the obvious object in introducing them was the proof of the fact that Daniel Hanauer was a party plain-

23

tiff in the foreclosure suit, it was not necessary for the plaintiffs to have read the whole record, but it would, it seems, have been better to have read the decree. However, if there had been a mistake as to the title of the cause, and none can be presumed, the defendants, by reading the decree themselves could have shown it. We can see, therefore, no objection to the admission of the orders, or of any of the evidence objected to, which tended to prove the payment of the money.

The defendant, Wells, was proven to have first taken possession of the land in January, 1870. Hanauer appears never to have been in possession. No question as to the statute of limitations can therefore arise; and the averment in the complaint that the plaintiffs were the children and heirs at law of William L. Rice, was not denied or put in issue by the answer.

The evidence was clearly sufficient to maintain the verdict.

The judgment is affirmed.