## WILLIAMS v. WASHINGTON.

1. MORTGAGE—VOID SALE—ASSIGNMENT.—A deed made by a mortgagee in his own name after the death of one of the mortgagors, under a power in the mortgage, is void, because (1) the death of one of the mortgagors revoked the power, and (2) the mortgagee could not convey the legal title in his own name. Such deed, however, operated as an assignment of the mortgage to the purchaser, and successive deeds to subsequent purchasers operated in like manner.

2. IBID.—IBID.—IBID.—ESTOPPEL.—These successive purchasers, taking only an assignment of the mortgage, and each in turn induced by the surviving mortgagor to purchase his moiety for his benefit, and treating him as their debtor, have no grounds to claim that this mortgagor is estopped from claiming title to his portion of the land.

3. IBID.—IBID.—IBID.—IBID.—And one of these purchasers—the next to the last—having purchased at the instance of this mortgagor, and taken his note payable at sixty days with interest, and soon after its maturity made deed of conveyance of this land to the present holder, and then induced this illiterate mortgagor to consent to such sale of the land, with the right to repurchase a portion of this land, a fraud was perpetrated, and neither of these purchasers can claim thereby any estoppel against this mortgagor.

4. IBID.—IBID.—IBID.—There was no error in not requiring the present holders to convey the land to plaintiff, as they were only mortgagees, but the deeds to them for plaintiff's moiety should be delivered up for cancellation.

5. AN EXCEPTION alleging that "the weight of the testimony is clearly against the finding of the Circuit Judge," is too indefinite for consideration.

6. MORTGAGE—PARTITION—PARTIES.—Two persons purchased a tract of land and mortgaged it, and one of the mortgagors died, after which there was a pretended sale by the mortgagee which operated only as an assignment of the mortgage. The purchaser, with the approval of the owners of the land, then made a division by line between the two portions. The surviving mortgagor brought this action against the several parties in possession, and the heirs of the deceased mortgagor, for recovery of the land and for partition. The Circuit Judge dismissed the complaint, and from this decree only the surviving mortgagor appealed, and as to him, it was reversed. *Held*, that no partition could be ordered, as the partition made had been acquiesced in, and that a vendor of a part of the deceased mortgagor's share could in this action have foreclosure of a mortgage given to him by the purchaser; and the present holder of the land of the surviving mortgagor was entitled to have his mortgage cancelled.

7. IBID.—TENDER.—The surviving mortgagor should be decreed to pay the balance due by him for the land, but without interest, as he had made tender of the debt and interest, which was refused.

Before WALLACE, J., Aiken, September, 1891.

This was an action by Sanders Williams against George Washington, Adeline Williams, Lewis Williams, J. C. Bodie, J. H. Beckman, and James Powell, commenced March 15, 1889, for recovery of land, damages, injunction to stay waste, and partition. In addition to the facts stated in the complaint, it should be also stated that Cæsar and Sanders Williams agreed between them as to the portion of the land upon which each should build his house, and after Cæsar's death and the purchase by Beckman, a surveyor ran the line, giving to each 116 acres. These two portions were separately sold by Beckman. Powell took his deed on November 1, 1887, on Sanders Williams' promise to pay him back the $150 paid by Powell to Henderson, with interest at ten per cent., payable January 1 next. On January 28 thereafter, he conveyed to Washington for $300.

The exceptions by plaintiff were as follows:

1. Because his honor, the presiding judge, erred in finding that the plaintiff was estopped from claiming any interest in the land described in the complaint, for it is submitted that there is nothing in the testimony showing that the plaintiff has done any act which would operate as an estoppel upon his setting up the claims made in the complaint. 2. Because, from the evidence, it appears that the deed taken by Wigfall, Henderson, and Powell were intended as mortgages, and that his honor erred in not so finding. 3. Because, from the evidence, it appears that the plaintiff has until the fall of the year 1889 to redeem the land from James Powell, and that Powell and George Washington are guilty of fraud in attempting to deprive the plaintiff of his title to said tract of land, and it was error in his honor in not so finding. 4. Because it appears from the evidence that the plaintiff made actual tender to James of the money advanced by him on the land at the request of the plaintiff, and that he, therefore, has the right to require James Powell and George Washington to convey the land to him, and his honor erred in not so finding. 5. Because it appears that the weight of the testimony is clearly against the

finding of the Circuit Judge.   6. Because his honor, the Circuit Judge, erred in decreeing that the defendant, George Washington, should have possession of the land described in the complaint.   7. Because it appears from the testimony that the legal title to the land described in the complaint is still in the plaintiff, and his honor erred in not so deciding.

*Messrs. Croft & Chafee,* for appellant.

*Messrs. M. B. Woodward* and *Henderson Bros.,* contra.

February 27, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   This action was commenced by the plaintiff, against the three defendants first named, on the 15th March, 1889; but by an order of Judge Wallace, dated 15th April, 1889, the last named three defendants were also made parties.   The action coming on to be heard before Judge Aldrich, at the September term, 1890, of the Court of Common Pleas for Aiken County, two special issues were framed and submitted to the jury: 1. What interest, if any, does the plaintiff own in the land described in the complaint?   2. Is the plaintiff estopped by his conduct, from claiming any title which he may have had to the land in dispute?   To the first issue the jury responded, "We find for plaintiff one-half undivided interest."   To the second issue the jury responded, "No."

Thereupon, Judge Aldrich, with the consent of all the parties to the action, passed an order referring the action to W. Q. Davis, Esq., to take the testimony on all the issues except those of title and estoppel, and report such testimony to the court, and by this order the stenographer was required to report to the court all the testimony taken in the trial of the issues by the jury.   All this testimony was presented to Judge Wallace, who heard the cause at the September term, 1891, and he filed his decree on the 10th October, 1891, as follows: "* * * I find that the plaintiff, from the testimony in the case, is estopped from claiming any interest in the land described in the complaint, and that the complaint cannot stand.   It is, therefore, ordered, that the complaint be dismissed with costs ; that the injunction heretofore granted against the defendant, George

Washington, be dissolved, and that the defendant, George Washington, have possession of the land now in the possession of the plaintiff, Sanders Williams." From this decree Sanders Williams appeals.

The defendants, George Washington, for himself, and J. H. Beckman and J. H. Powell, for themselves, also gave notice in connection with the appeal. Washington gave notice that in the event the Supreme Court should reverse the decree of Judge Wallace, he will insist that such court should direct a foreclosure of the mortgage from Cæsar Williams and Sanders Williams to J. H. Beckman. Beckman and Powell gave notice that they would urge, first, that Judge Wallace erred in not decreeing a foreclosure of the mortgages held by them respectively, executed by George Washington; and, second, in case of a reversal of Judge Wallace's decree by this court, that the old mortgage of Cæsar and Sanders Williams to J. H. Beckman should be foreclosed in favor of George Washington, and they should be paid what George Washington owes them respectively from the proceeds of such foreclosure of said mortgage.

The plaintiff in his appeal questions the conclusions of the Circuit Judge, in the first place, when he decides that the plaintiff is estopped from any claim of title to the land in controversy. It seems from the deed in evidence that G. A. Prothro, on the 12th day of December, 1877, conveyed a tract of land, situate in Aiken County, containing 232 acres, to Cæsar Williams and Sanders Williams, and that on the same day the said Cæsar Williams and Sanders Williams executed their mortgage of said lands to one J. H. Beckman. This mortgage was duly recorded. Cæsar Williams died in the fall of the year 1878, without having paid the debt to Beckman, and Sanders Williams failed to pay such debt. In December, 1879, the said Beckman, after advertisement, sold at public sale the whole tract of 232 acres of land to one C. F. Nurnberger, claiming such power of sale under a power included in the mortgage deed. The deed to Nurnberger for the land from Beckman was signed by such Beckman as mortgagee. This deed was inoperative as a deed of conveyance, *first*, because executed after the power in mortgagee to sell had been revoked by

the death of Cæsar Williams (*Johnson* v. *Johnson*, 27 S. C., 309); and, second, because the deed was not made in the name of the owners, but was made in the name of the mortgagee. *Webster* v. *Brown*, 2 S. C., 429; *De Walt* v. *Kinard*, 19 *Id.*, 286; *Dendy* v. *Waite*, 36 *Id.*, 569. While this deed from Beckman as mortgagee could not operate as a deed, yet it did operate as an assignment of the mortgage held by Beckman to Nurnberger. 2 Jones Mort., § 1902; *Stoney* v. *Shultz*, 1 Hill Ch., 495; *Givins* v. *Carroll*, *ante*, 413.

This equitable assignment of this mortgage by Nurnberger, was by him divided into equal shares, one of which shares he assigned to Beckman himself, and another share he assigned on the 3d December, 1879, to J. N. Wigfall, for and in consideration of $145. Wigfall assigned to C. K. Henderson on the 17th August, 1887, for the consideration of $50. C. K. Henderson assigned to James Powell on the 1st December, 1887, at a consideration of $150. James Powell assigned to George Washington, at a consideration, on credit, of $300. Now it may be stated that Nurnberger, Wigfall, Henderson, Powell, and Washington, when deeds were passed from one to the other, believed that each one successively was purchasing the fee to 116 acres of land, the one-half part of the tract of land originally conveyed by G. A. Prothro to Cæsar Williams and Sanders Williams; but, as we have before remarked, they actually in succession only became invested with the ownership of one-half of the mortgage debt of Cæsar and Sanders Williams to J. H. Beckman. Not only so, but Nurnberger, Wigfall, Henderson, and Powell actually held as assignees of such interest in the mortgage such estate for the plaintiff, Sanders Williams, for he induced each of them in turn to so purchase and hold such title for his benefit. At one time, while Wigfall held such interest in the mortgage and debt secured thereby, it was reduced to $50, by reason of payments made thereon by Sanders Williams. This amount was increased to $150, while in the hands of C. K. Henderson, by the agreement of Sanders Williams that the price of a horse purchased by said Williams from said Henderson should be protected by said assignment. There was nothing in the conduct of Sanders

Williams up to and including the assignment to Powell by which he would be estopped from asserting his rights in this land.

Let us see what else is in the "Case" bearing on this branch of the inquiry. It seems that before Powell obtained the mortgage from Henderson, the latter was pressing Sanders Williams to pay his indebtedness to him, and in this condition of things, Sanders Williams approached George Washington to purchase thirty acres of the land at $3.50 per acre, and Washington had agreed to purchase, when Mr. Ott ran the line and calculated the area of the land to be sold to Washington. Sanders objected to selling forty-seven acres, and some disagreement arose between these parties as to the price per acre Washington was to pay, and thereupon Sanders Williams went to Powell to get help, as has been before stated. George Washington was anxious, however, for the land, and went to Mr. Powell offering him one hundred per cent. on his purchase (Powell had bought at $150, and Washington agreed to pay him $300). This proved too much for Powell. He agreed and did sell to Washington, in utter disregard of the rights in the premises of Sanders Williams. When this poor unlettered man heard a rumor of this trade between Powell and Washington, he refused to believe it. He went to Mr. Powell, who told him he had really executed papers to Washington for the land, because he had been told by Washington that Sanders Williams did not pay taxes, &c. Under the delusion that his home was in peril—worse even, *that his home had been sold from him by Powell,* whose kindness he had solicited, and whose compensation for waiting a year was to be ten per cent. per annum interest—this poor man signed a paper written by Powell, wherein he bound himself to consent to the sale of "my farm, or what has been known as such," by James Powell to George Washington, on condition that I am to have the right to buy fifty-eight acres of the land at $3.50 per acre.

Should this poor man be held down to an estoppel by his conduct under these circumstances? We cannot think so. The judge was in error, and his decree must be reversed. How can a Court of Equity repress its indignation at such a cruel advantage being taken of a poor, ignorant, and helpless man by

this cold and calculating stranger within our gates? We have used the word stranger, because we are informed that Powell has not been long a resident of our State. If he had been a native, our words would have been stronger. As to the second exception of the plaintiff, which imputes to the successive holdings by Nurnberger, Wigfall, Henderson, and Powell of what was supposed to be a title to this land, the character of a mortgage, there can be but one opinion—it was such. The third exception, relating to the conduct of Powell and Washington, is rendered unnecessary by the views we have expressed in considering the first exception.

As to the fourth exception to the Circuit decree, "Because it appears from the evidence that the plaintiff made an actual tender to James Powell of the money advanced by him on the land at the request of the plaintiff, and that he has, therefore, the right to require James Powell and George Washington to convey the land to him, and his honor erred in not so finding," we will say, that inasmuch as we have shown that the title in this land is still in the plaintiff, Sanders Williams, and has never vested in James Powell or his grantee, George Washington, we see no reason why we should sustain this exception. Still, as these parties, Powell and Washington, have papers that may have been put on record in the registry office *as deeds,* it may be as well that we should require that the same shall be delivered for cancellation, and this we do.

The fifth exception is wanting in definiteness, and, therefore, will receive no attention.

The sixth exception is sustained. The Circuit Judge should not have ordered the 116 acres of land claimed by the plaintiff to be surrendered to George Washington. The seventh exception, alleging error in the Circuit Judge for refusing to recognize that the legal title to these 116 acres claimed by Sanders Williams was in said Williams, is well taken.

We will now examine the points of difficulty suggested by the notices of the defendants.

1. George Washington suggests that if Judge Wallace's decree is reversed, he should be decreed to be entitled to a decree

for the foreclosure of the mortgage executed by Cæsar and Sanders Williams to J. H. Beckmam. Washington stands before the court with two claims. (*a*) He purchased from Beckman sixty acres belonging to that half of the 232 acres tract of land that has always been treated by the parties as belonging to Cæsar Williams. It will be remembered that Beckman thought he bought this one half of the whole tract from Nurnberger in 1879, and said Beckman thereafter sold the same—that is, sixty acres of it—to George Washington, taking a mortgage from Washington. Unquestionably there is no reason why Washington should not be decreed to pay Beckman what he owes him on the purchase of this sixty acres. There need be no difficulty felt as to Cæsar's title, or that of his heirs at law since his death. They are all parties to this controversy, and have not appealed from any findings against them. And so, too, the matter of partition of this tract of 232 acres between Cæsar and Sanders Williams may be regarded as settled. Every one has acquiesced in the partition made in 1879, when the surveyor, Mr. Ott, laid down the dividing line between the two. Washington is due Beckman $78.75 on this mortgage, which bears date 31st day of December, 1883. This is a lien on the sixty acres of the Cæsar Williams half of the 232 acres, and this half (Cæsar Williams') was divided by the survey made by Mr. Ott. The Circuit decree hereafter to be rendered should provide for this foreclosure of the mortgage of Beckman on George Washington's sixty acres of land. (*b*) Washington may think he has a claim on Sanders Williams' half of the 232 acres of land. He has not a vestige of a claim. But he is entitled to protection against the so-called bond and mortgage he executed to James Powell for $300. Powell must be decreed to turn these over to the court cancelled in every particular.

Next we will consider the notices of Powell and J. H. Beckman. (*a*) Powell has no claims that should be recognized against George Washington. He has been already ordered to cancel what he thinks are claims, to wit: his bond and mortgage signed by Washington. (*b*) The plaintiff admits that he owes, and asks in his complaint to be

allowed to pay, the $150 he induced Powell to pay to C. K. Henderson for him.    This should be provided in the decree, but not a particle of interest must be allowed, for the reason that Sanders Washington offered to pay, and actually tendered payment of, the sum of $150, which Powell refused to accept.    The decree should provide that Sanders Williams pay to Powell this $150 at some definite period in the future, but that in default of such payment the 116 acres of land should be sold, and out of the proceeds $150 be paid to James Powell in full payment of all demands against Sanders Williams.    (c) Mr. Beckman, as before remarked, is entitled to be paid the mortgage he holds against George Washington.

It is ordered, that the decree of Judge Wallace be reversed, and that the action be remanded to the Circuit Court, with directions that the principles herein announced be embodied in the decree of the Circuit Court hereafter to he formulated.