# MOORE v. O'DELL.

No. 567.    Opinion Filed September 13, 1910.

(111 Pac. 308.)

1.    EVIDENCE—Admissions—Joint Interest — What Constitutes— Hearsay.  The issue being as to whether the defendant had either expressly or impliedly agreed to the appointmnt of a certain committee to represent all the lot occupants, whose duties were to appraise such lots, determine who the occupants were, and make certificate thereof, upon which the trustee, holding the legal title to said lots, should convey such title to such occupant when the occupant presented such certificate and the amount assessed to such lot.  Held, that statements made by persons at a mass meeting of the lot owners where it is not shown that said defendant was present or had knowledge of the calling of the meeting and the purpose thereof, with an express or implied assent thereto, were inadmissible as being hearsay.

2.    INDIANS—Alienation of Land—Effect of Bill of Sale—Evidence.  L., the allottee, having executed a bill of sale in favor of defendant to said lot for the purpose of placing him in possession thereof with a covenant therein that, when her restrictions against alienation were removed, she would execute a title in fee to him thereto, the Secretary of the Interior having permitted L. to alienate for town-site purposes said land with the proviso that it was to be sold to such persons as such town-site occupants should designate, held, that said bill of sale or conveyance was admissible only for the purpose of proving occupancy.

    (a) Evidence as to improvements, the amount, and value thereof placed thereon by the defendant on said lot was competent for the purpose of establishing occupancy, and, under the facts in the record, its admission was not prejudicial to the rights of plaintiff in error.

3.    INDIANS—Trial—Sale of Town-Site Allotment to Occupants— Determination of Occupants—Effect—Instructions.  (a) An instruction that, unless defendant participated in the mass meeting of lot occupants or had notice of the same with knowledge of the purpose for which it was called or convened, he was not bound thereby, held, under the facts in the record, not to be prejudicial error.

    (b) An instruction that if before said Simms sold said lot pursuant to said adertisement, the defendant was given an opportunity to pay the amount due on said lot, including the cost of advertisement and to take the deed therefor from Simms, then

plaintiff was entitled to recover under the record, held not to be prejudicial error to the defendant in error.

(c) Same as (b).

(d) An instruction that "the burden is upon him (plaintiff) to show by a preponderance of the evidence that the sale of said lot was made to him by the trustee, B. O. Simms, and that said B. O. Simms made to him a deed to said lot, under the circumstances set forth in the above instructions," is not reversible error; the court not being requested to charge as to the presumption arising relative to the trustee having complied with the terms of the trust in executing the deed.

4.  APPEAL AND ERROR—Review—Judgment. The judgment of the court being sustained by the weight of the evidence, the same will not be disturbed on review here.

5.  TRUSTS—Mortgages—Default of Mortgagor—Right of Possession —Conveyance of Trustee Not Concluding Cestui que Trust. A trustee holding the legal title, coupled with an interest, conveyed such title to another, under such circumstances as not to conclude the rights of the cestui que trust. Held, that said grantee is subrogated to the rights of the original trustee.

(a) Under the laws in force in the Indian Territory at the time of the erection of the state, a mortgagee after default by the mortgagor was entitled to the possession of the mortgaged property until the mortgage debt was discharged.

(b) The original tender made to the trustee neither having been renewed to his grantee nor an offer to make the same good, the plaintiff, under the facts in this record, would be entitled to possession of the mortgaged premises until such lien was discharged.

(c) Under the verdict of the jury as approved by the court, the conveyance by the trustee to the plaintiff not concluding the rights of the defendant as cestui que trust, and said defendant having the right to discharge said lien, the lower court, exercising the powers of equity, may direct that within a reasonable time the defendant shall pay into court for the benefit of the plaintiff the assessment, with interest thereon and the expenses of advertising and the cost of the suit.

(Syllabus by the Court.)

*Error from District Court, Okfuskee County; John Caruthers, Judge.*

Action by Lake Moore against J. O'Dell. Judgment for defendant, and plaintiff brings error. Modified.

On the 7th day of January, 1908, plaintiff in error as plaintiff commenced his action in ejectment against the defendant in error as defendant in the district court of Okfuskee county by fil-

ing petition in the usual form, praying for the possession of lot 18, in block 6, in the town of Weleetka, and for damages, rents and profits. And on the 10th of March, 1908, the defendant filed his amended answer, which, omitting the caption, is as follows:

"Comes now the above named defendant and files this, his amended answer to the petition of plaintiff filed herein after leave of court, and for answer to said petition alleges the following state of facts, to-wit: That the lot described in plaintiff's petition is a part of the allotment of one Martha Lowe, a Creek Indian, described as follows: 'The west half of the southwest quarter of section (15), and the southeast quarter of the southeast quarter of section (16), township (10), range (11) East, Okfuskee county." That, under the laws of the United States and treaties with the Creek Nation of Indians, said lands were inalienable except upon the approval of the Secretary of the Interior of the United States. That on the 8th day of February, 1904, said Indian allottee procured the removal of the restrictions upon her power to alienate said lands for townsite purposes to the occupants thereof. The letter of the Honorable Secretary of the Interior removing said restrictions, with all the terms and purposes thereof, duly certified, with the record indorsement thereon, by the register of deeds of Wewoka county, Okla., wherein said letter was filed for record March 3, 1904, with the clerk of the United States Court, as required by law, is attached hereto and made a part hereof marked 'Exhibit A.' That, under the terms of the said letter removing restrictions from said land, the allottee was directed and authorized to dispose of said lands at not less than $15,000, deducting first, however, from the sum mentioned, the amounts, if any, the allottee has received for occupancy rights from the present occupants of said tracts, not including, however, money received for rent, and that the said land which is to be sold for townsite purposes is, of course, to be disposed of to townsite occupants, and must be sold to such persons as such townsite occupants may designate.

"Defendant states that, on or about the 14th day of February, 1902, he went into possession of the lots described in plaintiff's petition under a certain so-called deed of occupancy, the original whereof, marked 'Exhibit B,' is attached hereto, and that defendant paid the sum of $25 for said right of occupancy upon said lands, and that plaintiff has made extensive improvements upon the said property, towit, a house of the reasonable

value of $900, a barn, well and other minor improvements, and that defendant has been continuously in the open, actual and notorious possession of the lots aforesaid, all of which was well known to plaintiff.

"Defendant further states that said property was purchased from the said allottee under the power granted in the aforesaid letter of the Secretary of the Interior through the intervention of a trustee for the occupants of said lands, and that one B. O. Simms so acted as trustee for that purpose.

"Defendant states that the lots comprising said lands were assessed according to proportionate value, and that the sum assessed against the lots mentioned in plaintiff's petition was the sum of $37.50; that defendant tendered the said trustee, B. O. Simms, the full sum of money, towit, $37.50, United States money, towit, national bank notes, greenbacks, treasury certificates and silver coin, in discharge of the said assessment, and that the said Simms refused to receive the same, and to execute a deed to defendant conveying said lots to defendant.

"Defendant further states that he now is, and always has been, ready and willing to pay said trustee the amount assessed against said lots, and that the said trustee fraudulently connived with the plaintiff, Lake Moore, the said Simms, and the said Moore, being at that time and at the present time engaged in the business, so-called, of buying land, by refusing to receive said money, to hinder defendant in obtaining title to his said lots, and to cheat and defraud him of the same, and wrongfully, without authority of law, caused said lots to be advertised as delinquent, and the said Simms executed a deed to said premises to his said business partner for the sum of $39.75, as near as defendant can ascertain.

"Defendant states that he tendered the aforesaid amount of assessment to the said Simms at the time other occupants were settling the assessments against lots, and that the said Simms well knew that defendant was the occupant of said lots and had constructed improvements thereon.

"Defendant denies that plaintiff has any title to said lots whatever, and that the refusal of the said trustee to receive the assessment against defendant's property was contrary to the letter of the Honorable Secretary of the Interior, and that said Simms had no power to advertise said lands and sell the same

to a bidder, under the law or the said letter removing the said restrictions.

"Wherefore defendant prays judgment against plaintiff, and that he go hence without day and recover his costs expended in this action."

Exhibit A, attached to said answer, is in part as follows:

"The department has concluded that, for the proper protection of all parties concerned, townsite occupants, and allottees, the Indians should proceed under their application to be allowed to alienate for townsite purposes. Permission is therefore hereby granted said allottees to alienate for townsite purposes, under the provisions of said act of March 3, 1903, the tracts as follows: Martha Lowe, the W. $\frac{1}{2}$ of S. W. $\frac{1}{4}$, section 15, * * * at not less than $15,000, * * * deducting first, however, from the sums mentioned in each instance, the amounts, if any, the allottees have received for occupancy rights from present occupants of said tracts, not including, however, money received for rent. It is to be understood, also, that the land which is to be sold for townsite purposes is, of course, to be disposed of for townsite occupants, and must be sold to such persons as such townsite occupants may designate."

Exhibit B, attached to said answer, is a purported bill of sale, dated February 14, 1902, signed by Martha Lowe, conveying the right of occupancy to said land unto D. J. O'Dell, wherein she covenanted with him that "so soon as she may lawfully do so under the laws now in force in the Creek Nation, or hereinafter enacted or put in force therein (the consent of the Secretary of the Interior being obtained if necessary), she will make and deliver to the said D. J. O'Dell, his executors, administrators or assigns, a deed in due form of law."

On March 12, 1908, plaintiff filed his reply to the amended answer, *in haec verba:*

"Comes now the plaintiff, and for reply to the amended answer of the defendant, denies each and every allegation therein contained except as hereinafter specifically admitted. For further reply to the amended answer, defendant admits that the lot described in the plaintiff's petition is a part of the allotment of Martha Lowe as set out in the answer, admits the allegations in regard to the removal of the restrictions upon said land, and that

an order was made by the Secertary of the Interior in regard thereto, as set out in the amended answer and the Exhibit A attached thereto, admits that said property was purchased from the allottee under the power granted in the aforesaid order of the said Secretary of the Interior, and through the intervention of the trustee for the occupants, and that one B. O. Simms acted as trustee for that purpose. For further reply to said amended answer, plaintiff admits that at one time, soon after the said Martha Lowe conveyed the said lands to said Simms as trustee, the defendant tendered to the said Simms the sum of $37,50, the amount assessed against said lot, and demanded a deed therefor, but plaintiff avers that the occupants of said townsite, in pursuance of the order of the Honorable Secretary of the Interior, referred to in the amended answer, for the purpose of properly guarding the interest of said occupants, has in a public meeting of the said occupants appointed a committee of eight reputable business men of said occupants to pass upon the question as to what persons were entitled to receive deeds from said trustee, and provided that no person should receive a deed to a lot until he should have obtained a certificate, signed by a majority of said committee that he was so entitled, and that all·persons should present such certificate within ninety days from the time when said trustee should be ready to execute and deliver deeds. Plaintiff further states that, at the time defendant tendered said sum of money to said Simms, the said Simms demanded of him that he should present to him a certificate signed by a majority of said committee that he was entitled to a deed to said lot before he would issue the same, which defendant failed and refused to do. Plaintiff further states that, soon thereafter, said Simms, of his own accord, procured said certificate from said committee, and offered to defendant to execute to him a deed to said lot upon the payment of said assessment, which the defendant failed and refused to do; that the said trustee, Simms, had advanced and paid to the said Martha Lowe and other Indians whose lands had been conveyed to him upon the same trust a large sum of money, towit, $23,000, to pay the purchase price thereof, and that the object and purpose of conveying the same in trust to said Simms was not only that he might convey the lots to the persons whom the occupants might designate, but also to reimburse him for the purchase price so paid and for the expense of the trust; that, after the expiration of the said ninety days above mentioned, the said Simms,

not having been reimbursed for his said outlay under the direction of said committee, which had full authority in that behalf, gave due notice by advertising in a newspaper published in said town of Weleetka that all lots included in said trust upon which the assessment had not been paid would, at the expiration of thirty days, be sold for the purposes of carrying out the purposes of said trust; that, at the expiration of said period, the defendant not having paid said assessment, the said lot was, by the said trustee, sold and conveyed to plaintiff; that, at all times since the conveyance of said lot to him by said trustee, plaintiff has been ready and willing to convey same to defendant upon the defendant refunding to him the amount of the purchase price thereof so paid out by him, together with his interest and necessary expenses incident to said purchase and of conveyance to defendant, and has often, before the commencement of this suit, offered the defendant so to do, which said offers have at all times been refused; that, defendant having refused to surrender possession of said property to plaintiff, he, plaintiff, had no other remedy than to bring suit; that the purchase price and interest and other expenses incident to the purchase of said lot amount to the sum of $50, and that, in the prosecution of this, in addition to the legal costs taxed herein, plaintiff has incurred other expenses and attorney's fees to the amount of $50, and plaintiff now offers, upon the payment of the sum of $100 and the costs of this suit by defendant, to reconvey said property to defendant. Wherefore (in the event defendant refuses to accept plaintiff's said offer) plaintiff prays judgment as prayed for in the petition."

On June 24, 1908, plaintiff moved the court to try said cause upon the chancery side of the docket, for the reason that, under the issues made in the pleadings, said case should be tried in chancery, and not to a jury.

The deed from Martha Lowe and her husband, Alexander Lowe, to B. O. Simms, trustee, omitting signature and acknowledgment, which is in due form, is as follows:

"Whereas, the Secretary of the Interior, under date of February 8, 1904, granted Martha Lowe, a Creek allottee, permission to alienate for townsite purposes, under the provision of the act of Congress of March 3, 1903 (32 Stat. 996), the tracts of land hereinafter described at not less than fifteen thousand dollars ($15,000.00), and,

"Whereas, said permission was granted on condition that said land be disposed of for the occupants of the townsite of Weleetka, Indian Territory, to such persons as such townsite occupants may designate, and

"Whereas, B. O. Simms of Weleetka, Indian Territory, has been duly designated by said townsite occupants as the person to whom, in the capacity of trustee, said tracts of land are to be sold;

"Now, therefore, this indenture, made and entered into this 27th day of February, one thousand nine hundred and four, by and between Martha Lowe, joined by her husband, Alex Lowe, of Weleetka, Indian Territory, parties of the first part, and B. O. Simms, trustee, of Weleetka, Indian Territory, party of the second part, witnesseth: That the said parties of the first part, for and in consideration of the sum of fifteen thousand dollars ($15,000.00), in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, convey, and confirm unto the said party of the second part the following described real estate and premises situated in the Muskogee or Creek Nation, and within the limits of the Indian Territory, towit: The west one-half of the southwest quarter of section fifteen (15), township ten (10) North, range eleven (11) East; and the southeast one-quarter of the southeast one-quarter of section sixteen (16), township ten (10) North, range eleven (11) East of the Indian Base and Meridian, containing one hundred and twenty (120) acres, except that portion thereof occupied as a right of way by the Ft. Smith and Western Railroad, together with all the improvements thereon, and appurtenances and immunities thereunto belonging or in any wise appertaining thereto, and warrant the title of the same. To have and to hold the said lands unto the said party of the second part, his successors and assigns forever.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written."

The jury having been impaneled, the following instructions were delivered:

"Gentlemen of the jury, this is a suit in ejectment brought by the plaintiff, Lake Moore, against the defendant, D. J. O'Dell, in which the plaintiff states that he has the legal title in fee simple and the equitable estate in the following described real estate situated in Okfuskee county, state of Oklahoma, towit: Lot 18.

in block 6, in the town of Weleetka, in this county, and by reason of having a legal and equitable estate in said lot, claims the immediate possession of the same, and alleges that the defendant unlawfully withholds the possession from him. Plaintiff also claims damages in the sum of $100 from the defendant for unlawfully withholding possession. Plaintiff further alleges that the defendant has unlawfully kept plaintiff out of possession for the past three years, and claims as rent from the defendant the sum of $200, and plaintiff asks judgment for the possession of said land and for $100 damages for withholding possession, and $200 for rents and profits. The court instructs you not to find any sum due the plaintiff from the defendant for rents and profits, should you find under these instructions for the plaintiff. The defendant interposes in answer to plaintiff's petition a general denial of all plaintiff's allegations, and further claims that the lot in question was part of an allotment of one Martha Lowe, a Creek Indian, and that, on the 8th day of February, 1904, the said Martha Lowe procured from the Secretary of the Interior removal of the restrictions upon the land in question, and allowed her to alienate the same for the townsite purposes to the occupant of this and other lands composing the townsite of Weleetka. The defendant claims as a further defense on the 14th day of February, 1902, he went into possession of the lot in question under a certain bill of sale executed by Martha Lowe, which gave him the right of occupancy of said land in question, and that he had been in possession of said lot ever since, and further states that he has made extensive improvements on the lot, to show the value of which the defendant has offered evidence. The defendant claims that the power to alienate said land, given to the allottee by the Secretary of the Interior, was clothed with the limitation that it was to be disposed of to townsite occupants and was to be sold to such persons as such townsite occupants might designate, and dedefendant further says that this particular lot in question was assessed according to the proportionate value, and that the sum assessed against the lot was the sum of $37.50 United States money, and that the defendant tendered to the trustee, B. O. Simms, to whom all the land embracing the townsite of Weleetka was deeded by Martha Lowe, the full sum of $37.50, United States money, and that said Simms refused to receive the same and to execute a deed to the defendant conveying said lot to said defendant. The defendant further states that he has always been

ready, and is now ready and willing to pay said trustee, B. O. Simms, the said amount of $37.50.

"(1) The court instructs you, gentlemen of the jury, that if you believe from the evidence that the occupants of the Weleetka townsite, of which this defendant was one, had in public mass meeting appointed a committee of their number to pass upon the question as to what persons were entitled to receive deeds from the trustee, and provided that no persons should receive a deed to a lot until he should have first obtained a certificate signed by a majority of said committee to the effect that he was so entitled, and you further find that this defendant participated in said public mass meeting, or had notice of said public mass meeting, knowing that it was called for the purpose of appointing a committee from the occupants of the Weleetka townsite, then you are instructed that said provision was a reasonable and just one for the purpose of properly safeguarding the interests of the occupants of said townsite, and if you further believe from the evidence that, at the time the defendant tendered the amount of the assessment on his lot to said Simms, the trustee, he failed and refused to produce such certificate, then the said Simms would not be bound to execute a deed to him. On the other hand, if you believe from the evidence that the occupants of the Weleetka townsite, of which this defendant was one, did not give the committee any authority to pass upon the occupancy rights of persons, and say which of them was entitled to a deed from the trustee by virtue of said occupancy, then the defendant would not be bound by any action of the committee, nor would the obtaining of a certificate from the committee be a condition precedent to the defendant's rights to have a deed from the trustee, nor would the trustee be authorized to sell a lot upon which the defendant had an occupancy right, without giving him an opportunity to prove and establish an occupancy right to the lot in question.

"(2) If you believe from all the evidence that, after the tender by the defendant to the said trustee, Simms, of the amount of his assessment, Simms, of his own accord, procured a certificate from the committee appointed under the circumstances hereinbefore designated, and offered to convey the lot to the defendant upon the payment of the assessment, then it became the duty of the defendant, if he desired a deed to his lot, to accept said offer and pay the assessment, and, if he failed so to do within

a reasonable time thereafter, then you are instructed that if the said Simms afterwards sold said lot after advertising the sale of same for a period of thirty days, and you further find that before said Simms sold said lot, pursuant to said advertisement, the defendant was given an opportunity to pay the amount due on his lot including the cost of advertising, and take a deed therefor from the said Simms, and failed to pay said sum and redeem his lot, then you should find for the plaintiff.

"(3) If you believe from all the evidence that the occupants of the Weleetka townsite, of which the defendant was one, held a public meeting and appointed the committee under the circumstances mentioned in the foregoing instructions, and gave said committee power to manage and control the disposition of the lots embraced in the Weleetka townsite, and that the defendant refused to furnish the certificate as mentioned above, or refused upon the trustee furnishing the certificate, to pay the assessment and procure his deed, then the trustee had the right, if you believe he was authorized so to do by the committee, after giving due notice by advertising the sale of said lot, to sell and dispose of the lot to any other person who would pay the assessment and cost of advertising, providing he gave the defendant the right to pay the assessment and cost of advertising on his lot at any time before said sale was made, and if you believe from the evidence that, under such circumstances, the trustee did sell and convey the lot to plaintiff, then the deed to the plaintiff vested in the plaintiff a good and valid title to the lot, and your verdict should be for the plaintiff, provided you find that the defendant refused to pay the amount of the assessment against his lot, together with the cost of advertising.

"(4) It is the duty of the plaintiff to make out his case by a preponderance of the evidence, and 'the burden is upon him to show by a preponderance of the evidence that the sale of said lot was made to him by the trustee, B. O. Simms, and that said B. O. Simms made to him a deed to said lot under the circumstances as set forth in the above instructions.

"(5) By a preponderance of the evidence, the court does not mean the largest number of witnesses on a given point, but, in determining where the preponderance of the proof is, you may take into consideration the opportunities the witnesses had for seeing, knowing or remembering what they have testified about, or the probability or improbability of its truth, their relation,

or action, if any, between the witnesses and the parties, and their interest or lack of interest in the result of the case, and their conduct and demeanor while testifying. It is your duty to reconcile all the statements of the several witnesses as far as you can, and, if you cannot do so on account of contradictions, then you have the right to believe the witness whom you believe to be the most worthy of credit, and disbelieve those whom you believe to be the most unworthy of credit.

"(6) In considering and deciding this case, you should look to the evidence for the facts and to the instructions of the court for the law of the case, and find your verdict accordingly, without reference to who is the plaintiff or who is the defendant. You must take the law as it is given to you by the court, and you have no right to consider anything as law, except as it is given to you in these instructions, but you, gentlemen of the jury, are the exclusive judges of all questions of fact.

"(7) If you believe from the evidence that, after a committee had been selected by the occupants of the Weleetka townsite, of which this defendant was one, to appraise the lots for the purpose of ascertaining what *pro rata* amount should be assessed to each lot occupant to pay for the purchase price advanced to the allottee by the trustee, and this was the extent of that committee's authority, and they were then discharged, the defendant would not be bound by any subsequent action of that committee so far as being compelled to present a certificate of his right as lot occupant to the trustee was concerned, but if that committee, or another committee, was at that time, or subsequently, selected by and with the consent of the lot occupants, of which the defendant was one, with authority to say who were occupants and entitled to a deed from the trustee, and issued certificates to that effect, then it would be incumbent on the defendant, or some one for him, to furnish the certificate from said committee to the trustee and pay the the assessment due on his lot."

"To the giving of said instructions No. 1, 2, 3, 4, 5, 6, and 7, * * * and to each and every part thereof, the plaintiff then and there duly excepted at the time."

The following instructions were prayed for by plaintiff, each of which was refused by the court:

"(1) The court instructs the jury that, if they believe from the evidence that the occupants of the Weleetka townsite had, in a public mass meeting, appointed a committee of their number to

pass upon the question as to what persons were entitled to receive deeds from the trustee, and provided that no person should receive a deed to a lot until he should have obtained a certificate signed by a majority of said committee, and that he was so entitled, then you are instructed that said provision was a reasonable and just one for the purpose of properly safeguarding the interest of the occupants of said townsite; and, if you further believe from the evidence that, at the time the defendant tendered the amount of the assessment of his lot to Simms, the trustee, he failed and refused to produce such certificate, then Simms was not bound to execute a deed to him.

"(2) If the jury believe from the evidence that, after the tender by the defendant to Simms of the amount of his assessment, Simms of his own accord procured a certificate from the committee and offered to convey the lot to the defendant upon the payment of the assessment, then it became the duty of the defendant, if he desired a deed to said lot, to accept said offer and pay the assessment, and, if he fails so to do within a reasonable time thereafter, you are instructed that he is estopped from claiming any right or title to said lot.

"(3) If the jury believe from the evidence that the occupants of the Weleetka townsite had held a public meeting and appointed the committee as set out in another instruction, and had given said committee power to manage and control the disposition of the lots, and that the defendant refused to furnish the certificate as set out in another instruction or refused upon the trustee's furnishing the certificate to pay the assessment and procure his deed, then the trustee had the right, if you believe he was authorized so to do by the committee or a special committee duly authorized by the committee, after giving due notice, to sell and dispose of the lot to any other person who would pay the assessment, and, if you believe from the evidence under such circumstances the trustee did sell and convey the lot to plaintiff, then the deed to plaintiff vested in plaintiff a good and valid title to the lot, and your verdict should be for the plaintiff.

"(4) The jury are instructed that although they may not believe that the trustee, Simms, had any particular authority or instruction from the committee to sell the lot, yet, if they further believe that the defendant refused to furnish a certificate as required by the committee, if you believe a certificate was required under authority of the occupants, or if he refused to pay the as-

sessment upon Simms furnishing the certificate, and if you further believe that under arrangement with the occupants Simms had furnished the money to pay for the townsite and was entitled to be reimbursed for his outlay and expenses out of the sale of the lots, then Simms had the right after that of a reasonable time and due notice of his own accord to sell and dispose of the lot, and, if he did so sell and dispose of the same to plaintiff, then his deed to plaintiff conveyed a good and valid title, and your verdict should be for plaintiff.

"(5) The jury are instructed that the effect of this deed from Simms, trustee, to the plaintiff, was to convey the legal title in the property to Moore, and in no event can the defense interposed by defendant be available to him until he shall have actually paid or tendered to Moore the amount of the assessment or purchase price paid by Moore on the lot, and you are instructed that there has been no evidence introduced tending to prove such payment or tender, and your verdict should therefore be for the plaintiff for the possession of the lot and for nominal damages.

"(6) The court instructs the jury that, upon the undisputed facts in this case, the finding and verdict should be for the plaintiff for the possession of the lot, and for nominal damages.

"(7) The jury are instructed that, although they may believe the committee of eight had no authority to certify to who should be entitled to deeds to lots or that they had been discharged before the time at which they made such certificates, yet, if they further believe that the committee acted in that capacity and made such certificates with the same sanction and acquiescence of the occupants of said townsite in general, then the defendant is bound by their action in that respect."

Exceptions were saved as to each of said instructions. The jury returned a verdict in favor of the defendant. Motion for new trial made in due time being overruled, the question is now properly here for review.

Such additional statement of facts will be made hereinafter in the opinion as may be essential.

*W. W. Wood* and *Oliver Starr,* for plaintiff in error.—Citing: *Simms v. Richardson,* 32 Ark. 304; *Wells v. Rice,* 34 Ark. 346, *Whittington v. Flint,* 43 Ark. 504; *Cohn v. Hoffman,* 45 Ark. 376; *Schearff v. Dodge,* 33 Ark. 346; *Renard v. Clink* (Mich.) 51 N. W.

692; *Robinson v. Stone* (Ala.) 45 L. R. A. 66, 71; 27 Cyc. 1291-1293.

*J. G. Potter,* for defendant in error.—Citing: *Winfield Town. Co. v. Maris,* 11 Kan. 105; *Rathbone v. Sterling,* 25 Kan. 444; *Marysville Inv. Co. v. Holle,* 49 Pac. 332; *City of Pueblo v. Budd,* 36 Pac. 599; *City of Helena v. Albertose* (Mont.) 20 Pac. 817; *Threadway v. Wilder,* 8 Nev. 91.

WILLIAMS, J. (after stating the facts as above). The following assignments of error as to the action of the lower court are urged by counsel for plaintiff in error:

(1) J. D. Patterson, a witness for the plaintiff, on original examination stated:

"The public meetings that were held there were well attended. I do not know how I got notice of them. Q. I will ask you whether or not the matter of these restrictions being removed and the sale of these lots, I mean the appraisement of the lots and the making of proof and the matter connected with the trustee and the procurement of title thereunder and so on, as to whether there was much discussion or not about that matter in the town of Weleetka? By Mr. Potter (Counsel for Defendant): We object. Immaterial. By Mr. Wood (Counsel for Plaintiff): It is proper to show that it was a matter generally talked of in Weleetka, and notice brought home to everybody who was there about what was going on at the meetings and proceedings. By the Court: Objection sustained."

(2) .Q. "State to the jury what improvement, if any, you have made on this property. Counsel for Plaintiff: We object. * * * It is immaterial. By the Court: Overruled." And the witness was permitted to testify as to the improvements and the value thereof, and, further, that he went in possession of said lot under a bill of sale from Martha Lowe, the allottee.

(3) The court, *inter alia,* charged the jury as follows:

"(a) And you further find that this defendant participated in said public mass meeting, or had notice of said public mass meeting, knowing that it was called for the purpose of appointing a committee from the occupants of the Weleetka townsite. (b) And you further find that before said Simms sold said lot, pur-

suant to said advertisement, the defendant was given an opportunity to pay the amount due on his lot, including the cost of advertising, and take a deed therefor from the said Simms, and failed to pay said sum and redeem his lot.    (c) Providing he gave the defendant the right to pay the assessment and cost of advertising on his lot at any time before said sale was made.    (d) And the burden is upon him to show by a preponderance of the evidence that the sale of said lot was made to him by the trustee, B. O. Simms, and that said B. O. Simms made to him a deed to said lot under the circumstances as set forth in the above instructions."

(4) The court's refusal to direct a verdict in favor of plaintiff.

(5) The court's refusing to adjudge plaintiff to be entitled to the possession of the premises.

1. It is insisted that this evidence was competent for the purpose of bringing home to the defendant notice of the action of the mass meeting held by the occupants of said townsite in regard to listing, appraisement, and assessing lots, and the powers that might have been given to any committee appointed by them as to making the required proofs of the right of occupancy before the execution of the deeds; the trust being for the benefit of the occupants of said townsite as an aggregation. No authority is cited in support of this contention.    Unless it be shown that the defendant in error was present at said meeting or place where such statements were made, and that he heard such statements, the same were inadmissible and hearsay as to him. No proper predicate appearing to have been laid for the introduction of such evidence, it was inadmissible.

2. The defendant in error went into possession of this lot in question under Martha Lowe, a member of the Creek Tribe of Indians, who gave him a bill of sale with a view of giving him a right of occupancy, covenanting therein that at such time as her restrictions against alienation were removed and she were permitted she would convey him the title in fee.    This bill of sale was void, and was not admissible for any purpose other than to explain how the defendant in error came in possession of said lot.

Vol. 27—14

It was not competent to prove title in the defendant in error, but to show that he was an occupant of such lot as was contemplated by the Secretary of the Interior in the removal of restrictions on said land, wherein he provided that such allottee should sell such lots to such parties as were designated by the occupants. The evidence as to the improvements and amount and value thereof placed on said lot by the defendant in error was competent for the purpose of showing his occupancy and the extent thereof.

Counsel for plaintiff in error, contending that the evidence shows that Simms, the trustee, acted in perfect good faith in refusing to accept the tender of the payment of the assessment without the production of the certificate of occupancy from the committee, insist that the evidence relative to the improvements, the extent, and value thereof was "so manifestly prejudicial to the rights of the plaintiff that it would seem necessary only to call attention to it." The *pro rata* assessment made on said lot was $37.50, and the evidence admitted showed the improvements on the lot to be worth about $600. Why was not this evidence, in connection with all the circumstances, competent on the issue as to the good faith of the trustee? Further, the defense interposed was an equitable one; the verdict of the jury thereon being merely advisory to the court. The court heard all the evidence, and approved the verdict of the jury. Under such circumstances, in view of the other conclusions hereinafter reached, assuming that the evidence as to the value of the improvements was immaterial, the admission of such evidence did not constitute a reversible error.

3. Was the instruction "a" relative to defendant's participating in said public mass meeting or having notice of the same, with the knowledge of the purposes that it was convened for, etc., erroneous for the reasons (1) that the defendant was not entitled to notice; (2) that the court did not define what it took to constitute notice; and (3) because it required the jury to find that the defendant must not only have had notice of the meeting but also of the action it was proposed to take. We do not think that the defendant could be deprived of his rights or be bound by the

acts of the assembly of lot occupants without his participation therein or subsequent ratification of same. The plaintiff, not having requested the trial court to instruct the jury what would constitute notice, will not be allowed here to complain of such omission.

That portion of the instruction, if (b) "before said Simms sold said lot pursuant to said advertisement the defendant was given an opportunity to pay the amount due on said lot, including the cost of advertisement, and take the deed therefor from said Simms and for him to pay said sum and redeem his lot," on this record seems to be correct. The trustee, Simms, holding said land to be conveyed or disposed of to the occupants under the terms and conditions imposed by the Secretary of the Interior, would receive *pro rata* assessments to be reimbursed for moneys paid for the fee-simple title from the allottee. No forfeiture could be visited upon said occupant (the defendant) except either by express or implied laches or default on his part. Forfeitures are neither favored in law nor equity. And no forfeiture will be visited upon the defendant in this case unless he, after knowledge of the facts, either expressly or impliedly so acted as to bring same upon himself.

The instruction "c," ."provided he gave the defendant the right to pay the assessments and cost of advertisement on his lot at any time before said sale was made," was substantially covered by instruction "b," which we held above not to operate as prejudicial error.

As to instruction "d," relating to the burden of proof, it states the general rule. Counsel for plaintiff in error appears nowhere to have requested the court to instruct the jury as to what presumption arose from the conveyance as to the terms of the trust having been complied with. Not having made such request, he is not entitled on review here to complain.

4. Counsel for the plaintiff in error in his brief states:

"We will not contend that the verdict is not so insufficiently sustained by the evidence as to justify the setting of it aside on

that ground, yet we do say that the weight of the evidence was so decidedly in favor of the plaintiff, and the purpose of the defendant in his pleadings, and in the manner of conducting the trial, to unduly prejudice the jury against the plaintiff, was so evident that the court ought to scan closely the whole record to see that in the introduction of evidence and in the instructions to the jury the rights of the plaintiff were carefully guarded."

We have carefully examined the record in this case and the verdict of the jury under the evidence, and judgment should have been entered as hereinafter indicated.

5. The defendant was not entitled to defend against this action without tendering the amount of the assessment on the lot and making the tender good. He seems to have gone on the theory that he was not bound to recognize the plaintiff in error by making a tender to him instead of Simms, the trustee, after plaintiff's purchase at the sale made by Simms. A committee having been appointed to investigate and certify as to who the occupants were, the defendant denied that he participated in these meetings or had knowledge thereof. The jury found with him, and, if he had not such knowledge and had not consented either expressly or impliedly to the appointment of such committee for such purposes, he could not have been deprived of his right as an occupant to the title to such lot without his consent either express or implied. Simms, the trustee, had advanced the purchase price for this land, being entitled to reimbursement for such payment out of the assessments as paid; thus being a trustee coupled with an interest. The conveyance to him was not solely for the purpose of giving him power to convey, but also to secure him for the advancements made to the allottee in the way of the purchase price. Under the laws of Arkansas then in force in the Indian Territory, a mortgagee after default by the mortgagor was entitled to the possession of the property until the mortgage debt was discharged, and could maintain ejectment therefor. *Simms v. Richardson,* 32 Ark. 304; *Wells et al. v. Rice et al.,* 34 Ark. 346; *Whittington v. Flint,* 43 Ark. 504, 51 Am. Rep. 572; *Cohn v. Hoffman,* 45 Ark. 376.

That the assessment on said lot was due to the trustee, Simms, before he conveyed to the plaintiff in error is not controverted. In the case of *Harding v. Gillett,* 25 Okla. 199, 107 Pac. 665, which has been before this court as well as the Supreme Court of the United States at different times (*Romig v. Gillett,* 10 Okla. 186, 62 Pac. 802; *Gillett v. Romig et al.,* 17 Okla. 324, 87 Pac. 325; *Harding v. Garber,* 20 Okla. 11, 93 Pac. 539; *Romig et al. v. Gillett,* 187 U. S. 111, 23 Sup. Ct. 40, 47 L. Ed. 97), it was held that the purchaser at a void mortgage foreclosure sale succeeds to the rights of the original mortgagee.  The tender made by the defendant to the trustee, Simms, unless kept good, did not discharge the trust lien and have the effect of vesting the legal title in the defendant. *Canfield v. Conkling,* 41 Mich. 371, 2 N. W. 191; *Renard v. Clink,* 91 Mich. 1, 51 N. W. 692, 30 Am. St. Rep. 458; *Schearff et al. v. Dodge,* 33 Ark. 340; *Frank v. Pickens,* 69 Ala. 369; *Thompson v. S. J. & K. L. & B. Ass'n,* 23 Kan. 209. The rule seems to be that a conveyance by a trustee, although in violation of the trust, vests the legal title in such grantee, thereby substituting him as trustee, and the remedy of the *cestui que trust* is to redeem.  *Robinson v. Stone,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; 28 Am. & Eng. Encyc. of Law (2d Ed.) p. 785. In jurisdictions where the mortgage vests the legal title in the mortgagee, a conveyance of the mortgagee of the mortgaged premises operates to convey all of his interest in the mortgaged property. *Sadler v. Jefferson,* 143 Ala. 669, 39 South. 380; 27 Cyc. p. 1291, and authorities cited in footnote 50. Where the mortgagee executes a deed in attempting to execute a power of sale, which proved to be ineffective as a conveyance, it operates to convey all the mortgagee's interest. *Salvage v. Haydock,* 68 N. H. 484, 44 Atl. 696; *Williams v. Washington,* 40 S. C. 457, 19 S. E. 1.

Section 4600, Wilson's Rev. & Ann. St. Okla. 1903, provides:

"Where, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, though a verdict has been found against such party."

The judgment herein was that the plaintiff take nothing and the defendant go without day, with his costs.

The judgment should be modified permitting the defendant to pay into court for the plaintiff in error within a reasonable time the amount of said assessment, together with the interest and expenses of advertising and the costs accruing, not only in the lower court, but in this court (*Hamlett v. Tallman,* 30 Ark. 505; *Woodruff v. Trapnall,* 12 Ark. 640; *Park v. Wiley,* 67 Ala. 310), upon which the plaintiff shall be required to convey the title to said lot to the defendant.

All the Justices concur.